**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAVINIA FESTIVAL ASSOCIATION, a not for profit corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:23-cv-15322 |
| v. | ) ) | Judge Manish S. Shah |
| RAVINIA BREWING COMPANY LLC, RAVINIA BREWING COMPANY CHICAGO, LLC, and RAVINIA BREWING IP LLC, | ) ) ) ) ) | Magistrate Judge Gabriel A. Fuentes |
| Defendants. | ) | |

**DEFENDANTS RAVINIA BREWING COMPANY LLC'S AND RAVINIA BREWING
COMPANY CHICAGO LLC'S
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Michael J. Delrahim (No. 6277361)
Andrew A. Jacobsen (No. 6211224)
Shorge Sato (No. 6278382)
Brown, Udell, Pomerantz & Delrahim, Ltd.
180 North LaSalle St., Suite 2850
Chicago, Illinois 60601
Tel:     (312) 475-9900
Fax:    (312) 475-1188
Email: mdelrahim@bupdlaw.com
          ajacobson@bupdlaw.com
          ssato@bupdlaw.com

*Attorneys for Defendants Ravinia Brewing
Company, LLC, Ravinia Brewing Company
Chicago, LLC and Ravinia Brewing IP LLC*

**INTRODUCTION**

The story that Festival attempts to tell in its First Amended Complaint is fundamentally ridiculous – a customer walks into a bar (one of Brewing's taprooms) and is confused as to whether he is sitting on a barstool, or on the manicured lawns at Ravinia Festival Park, or as to whether this bar and its offerings are affiliated with the world-class Ravinia Festival Association because both provide "food" and "music" and share the name "Ravinia" in common. This is caveman logic. Festival does not provide any basis to infer that this story is remotely plausible, let alone likely. For this and other reasons, the Complaint should be dismissed.

**ARGUMENT**

### I.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-556. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This Honorable Court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 754 n. 1 (7th Cir. 2012).

When deciding a Rule 12(b)(6) motion, conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Vincent v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A plaintiff must offer "more than labels" and the complaint must "contain either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal theory."

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dent. Specialties*, 390 F. Supp. 3d 892, 897 (N.D. Ill.

2019) (Shah, J.)

## II. Counts I through IV and VII - XI Should Be Dismissed For Failure To Plausibly Plead A Likelihood of Confusion

"The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation,

connection or sponsorship of goods or services among the relevant class of customers and potential

customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir. 1992)

(quoting 2 Thomas Mccarthy, *Trademarks and Unfair Competition*, § 23:1, at 42-43, 46-47 (1991

Supp.)). This Circuit applies "a slightly modified version of Judge Friendly's analysis" in *Polaroid*

*Corp. v. Polaroid Electr. Corp.*, 287 F.2d 492, 495 (2nd Cir. 1961) in determining a likelihood of

confusion. *McGraw Edison v. Walt Disney Prods.*, 787 F.2d 1163, 1166 (7th Cir. 1986) (*citing*

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325 (7th Cir. 1977)). The

seven factors are: (1) similarity of the marks; (2) similarity of the product; (3) area and manner of

concurrent advertising and use; (4) degree of care likely to be exercised by the consumer; (5)

strength of plaintiff's mark; (6) actual confusion; and (7) intent of the infringer to palm off its

products as those of another. *McGraw Edison*, 787 F.2d at 1166.

The test in this Circuit of whether there is a likelihood of confusion is "whether an appreciable

number of ordinarily prudent prospective purchasers will be confused." *Rust Environment &*

*Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1219 (7th Cir. 1996). While a plaintiff is not

required to prove likelihood of confusion at the pleading stage, it must still plead facts sufficient

to make it plausible that such likelihood of confusion exists. *Beacon Hill Staffing Grp., LLC v.*

*Beacon Resources, LLC*, Case No. 19-cv-04121, 2020 U.S. Dist. LEXIS 222461, at *8 (N.D. Ill.

Nov. 30, 2020).

All of Festival's allegations regarding the likelihood of confusion are purely conclusory assertions that Brewing's business activities are "likely to cause confusion and mistake and to deceive consumers" as to a purported affiliation between Brewing and Festival. (1st Am. Cmplt., Dkt. 57, ¶¶ 45, 53, 61, 68, 75, 106). Accordingly, this motion to dismiss should be granted.

### 1. Similarity of the Marks

A name is "confusingly similar to an existing trademark if it is similar in sound, appearance, meaning, or connotation." *Indep. Nail & Packing Co. v. Stronghold Screw Products, Inc.*, 205 F2d 921, 924 (7th Cir. 1953). Festival does not plead any facts regarding the comparative qualities of the respective RAVINIA Mark and RAVINIA BREWING Mark. Festival does not even place images of the marks in the context that a customer would see them. *See Barbecue Marx, Inx. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000) ("Because the public will encounter the marks in written as well as spoken form, we believe it is essential to consider the marks' visual characteristics."); *Sorensen v. DW-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (the court "must compare the marks in light of what happens in the marketplace and not merely by looking at the marks side-by-side.") There is no basis in the First Amended Complaint for a plausible inference that the two marks are confusingly similar.

### 2. Similarity of the Products

In analyzing the similarity of products, the test is "whether the products are the kind the public attributes to a single source." *McGraw Edison Co. v. Walt Disney Prods.*, 767 F.2d 1163, 1169 (7th Cir. 1969). There are three levels of product similarity delineated by case law. In descending order of similarity, the levels are: (1) competitive, (2) non-competitive but related, and (3) non-competitive and non-related. *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 995 F. Supp. 991, 1000 (N.D. Ill. 1997).

Festival does not describe any of the "products" sold by Brewing, other than to allege that RBC planned to open "a small, beer-focused restaurant and bar" (1st Am. Cmplt., Dkt. 57, ¶¶ 9, 35), that it operates "a small restaurant and bar in Highland Park" (*id.* ¶ 20), and that RBC-C operates "a large restaurant and bar in the Logan Square neighborhood of Chicago, Illinois, approximately 20 miles from Highland Park." (*Id.*) Festival also does not describe its own food and beverage offerings, other than alleging generally that it "offers extensive restaurant, catering and beverage services," (*Id.* ¶ 17). Festival does not even attempt to draw a comparison of the qualities of food and beverage, marketing, presentation or point-of-sale experience.

In terms of live music, Festival alleges that Brewing advertises and sponsors "live music at their venues," but does not otherwise describe such music outside of an alleged recent performance at the Logan Square brewpub by the Chicago Youth Symphony Orcherstra's jazz student ensemble. (*Id.* ¶¶ 13, 14, 41) Festival's First Amended Complaint contains a number of allegations regarding Festival's "internationally renowned," "historic," "artistically diverse" outdoor live musical performances. (*Id.* ¶¶ 1, 16, 17, 18, 24, 31, 35). Festival alleges that "[c]lassical music is a foundational focus at Ravinia," and that the Chicago Symphony Orchestra "has formally been in summer residence at the festival since 1936." (*Id.* ¶ 17). Festival alleges that its live music performances occur at its own Ravinia Festival Park in Highland Park. (*Id.* ¶ 14, 17, 29, 38(a)). Festival also alleges that it "regularly presents jazz performances," and its "Steans Institute" sponsors "a jazz program for aspiring professional jazz musicians that offers many performances." (*Id.* ¶ 41).

Other than the reference to charitable programs offered to jazz students, the First Amended Complaint contains no allegations that compare the music offerings of Festival and Brewing, or that would even inferentially support the conclusion that their food or music offerings are in any

way "competitive" or "related." *Knaack Mfg. Co.*, 955 F. Supp. at 1000. It is not plausible that an appreciable number of consumers would confuse a local artist playing at one of Brewing's taprooms with one of the "world renowned" artists performing at Ravinia Festival Park. In fact, there are no allegations that Brewing even charges a cover or sells tickets for its live artists, whereas Festival admits that it sells tickets to its shows. (*Id.* ¶ 19).

Finally, there are no allegations about the overall context, or ambiance and themes, in which the music and food products and services are sold at either Festival or Brewing that would support a plausible inference that an appreciable number of consumers might be confused as to affiliation or association. The case of *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. 2000) is instructive, if not controlling. This case involved a trademark infringement action brought by the owner of the "Smoke Daddy" barbecue restaurant in the Near West (Wicker Park) neighborhood of Chicago against 551 Ogden, Inc., the owner of the Twisted Spoke restaurants that planned to open a "Bone Daddy" barbecue restaurant in River West, about 1.4 miles away from Smoke Daddy. The Seventh Circuit reversed a preliminary injunction entered against 551 Ogden, holding that the plaintiff did not meet its burden of proof with respect to "likelihood of confusion."

With respect to the second factor, "similarity of products," the Seventh Circuit noted that while both planned to serve "the same product: barbecue," there were substantial "differences in the restaurants' ambiances and themes." *Id.* 1045. The Seventh Circuit noted that Smoke Daddy was a "small restaurant, seating on 42, and decorated in a 1950s style" that "focuses heavily on blues music," whereas "Bone Daddy" had an "irreverent" style using "sexually charged slogans" and that its "interior has a different feel" with a "stronger emphasis on food." *Id.*

Although the parties both have "food" and "music," the "ambiances and themes" of Festival and Brewing are not alleged to be similar. Further, there are no facts alleged that would support

- 5 -

even the plausible inference that a consumer would confuse the "ambiance and themes" of Brewing and Festival.

### 3. Area and Manner of Concurrent Use

The third factor requires the Court to consider "whether there is a relationship in use, promotion, distribution or sales between the goods and services of the parties." *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 (7th Cir. 1990). Festival alleges no facts showing any relationship in use, promotion, distribution or sales. Festival does not even allege any overlap in customer base. Festival only alleges that Brewing's Highland Park taproom is "near" Festival at Ravinia Festival Park but does not elaborate or provide any further detail. According to Google Maps, RBC's Highland Park taproom at 582 Roger Williams Ave. is between 1.0 and 1.2 miles away from Ravinia Festival Park. In *Barbecue Marx*, the Seventh Circuit held that the district court "committed clear error" when it weighed this third factor in favor of injunctive relief, where Smoke Daddy and Bone Daddy were 1.4 miles apart. *Id.* at 1045.

### 4. Degree of Care Likely To Be Exercised By Consumers

As to "degree of care," Festival again provides no allegations to support an inference of probable confusion. A Festival-goer, who is presumably a classical music or live performance aficionado, is not likely to confuse a local musician at the Highland Park taproom with the "world-renowned artists" like Luciano Pavarotti and the Chicago Symphony Orchestra.. (1st Am. Cmplt., Dkt. 57, ¶ 17). In *Barbecue Marx*, the Seventh Circuit found that the District Court committed "clear error" in finding this factor in favor of injunctive relief, noting that "Smoke Daddy is a critically acclaimed restaurant" and its customers are "barbecue aficionados" who would not likely dine at the wrong restaurant out of confusion. *Id.* Festival does not allege that it even sponsors or hosts live musical performances outside of its Ravinia Festival Park, or that it sells food to non-

Festival-goers outside of its grounds. Given that Festival charges an undisclosed amount for admission to its events, whereas it is not alleged that Brewing charges cover or sells any tickets, an ordinarily prudent customer would not plausibly confuse "free" live music with "not free."

### 5. Strength of the Mark

"If the mark is weak, its protection may have an 'extremely narrow scope,' and may indeed be limited to similar goods similarly marketed. Only the strong mark will be protected against infringements arising out of its use in connection with non-competing goods." *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978). The strength of a mark "cannot be proven merely by statements from a plaintiff's executives that its mark is famous." *Reddi Bev. Co. LLC v. Floral Bevs, LLC.,* No. 1;23-cv-06147, 2023 U.S. Dist. LEXIS 227494, at *24 (N.D. Ill. Dec. 21, 2023) (Valderrama, J.) (*quoting S Indus., Inc. v. JL Audio, Inc.* 29 F. Supp. 2d 878, 892 (N.D. Ill. 1998) (cleaned up)). That a registered trademark has become "incontestable" creates no presumption of its strength nor does it broaden the scope of the mark's protection. *Knaack Mfg. Co.*, 955 F. Supp. at 1002. "The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *Sands, Taylor & Wood Co.*, 978 F.2d at 959.

Although Festival repeatedly asserts that its trademarks are strong, it fails to distinguish between the strength of its prior mark, "RAVINIA FESTIVAL," and its more recently registered 2011 "RAVINIA" mark. Thus, there are no factual allegations sufficient to support a plausible inference that its standalone "RAVINIA" mark has any unique or distinct strength. Both marks are "geographically descriptive,"[1] and thus are only protected to the extent of their "acquired

---

[1] This Honorable Court can and should take judicial notice of the fact that "Ravinia" is the name of a historical district in the City of Highland Park. *See United States v. Mendell*, 447 F.2d 639,

secondary meaning." *Bishops Bay Founders Group, Inc. v. Bishops Bay Apts., LLC*, 301 F. Supp. 2d 901, 907 (W.D. Wis. 2003). Courts define secondary meaning as "a *mental association* in buyers' minds between the alleged mark and a single source of the product." *Reddi Bev. Co. LLC*, 2023 U.S. Dist. LEXIS 227494, at *11. Here, the "acquired secondary meaning" of RAVINIA refers to its live musical performances (and restaurant catering services) provided to Festival-goers at Ravinia Festival Park. Because Festival does not plead that it is a source of live music or food and beverage outside of Ravinia Festival Park, its mark is weak in this particular case.

### 6. Actual Confusion

Festival's sole claim of "actual confusion" is a conclusory assertion made on information and belief. (1st Am. Cmplt., Dkt. 57, ¶ 47). Other than this, Festival does not allege a single fact that would allow the plausible inference that any consumers are actually confused by the food/beer/music offered at Brewing's brewpubs and the "world renowned" offerings at Ravinia Festival Park.

### 7. Intent to Palm Off The Product As That Of Another

Even though initially in 2017, Defendants' owners contemplated a collaboration with Festival, there are no allegations that Defendants are currently operating RAVINIA BREWING in order to "palm off" its food and music as those of Festival. "In the infringement context, 'intent' refers to the intent to confuse consumers, not merely the intent to use a mark that is already in use somewhere else." *Reddi Bev. Co. LLC,* 2023 U.S. Dist. LEXIS 227494, at *26 (*citing Roadget Bus. PTE LTD v. PDD Holdings Inc.*, No. 1:22-cv-07119, 2023 U.S. Dist. LEXIS 131974, at *5 (N.D. Ill. July 31, 2023)).

---

641 (7th Cir. 19071) ("Among the matters long recognized as proper subjects for judicial notice are a wide range of geographic facts, including location.")

### III. Counts I and II Should Be Dismissed Against Brewing Because Festival Has Not Alleged Sufficient Facts To Establish A Rescission Of The 2018 Agreement.

In order to plead a *prima facie* case for Section 32 infringement, Festival must show that Defendants' use of the "RAVINIA Mark" was "without the consent" of Festival. *Dunkin' Donuts, Inc. v. Donuts, Inc.*, 99 cv 1141, 2000 U.S. Dist. LEXIS 1727, at \*12 (N.D. Ill. Dec. 1, 2000) ("An element of § 32 is that defendant use the marks in commerce without the owner's consent.") As an initial matter, Festival does not allege a single fact to support its claim that Defendants are using the "RAVINIA" Mark as opposed to their own registered "RAVINIA BREWING" mark.

Festival admits in its First Amended Complaint that in 2018, Festival and RBC entered into an agreement whereby Festival "agreed to not object to RBC's planned use of the name, 'Ravinia Brewing Company' for RBC's beer brewing operation" provided that RBC complied with "simple guidelines intended to minimize potential consumer confusion as to the lack of any relationship between … [Festival] and RBC's local restaurant and bar…." (1st Am. Cmplt., Dkt. 57, ¶¶ 10, 35, 36). A true and correct copy of the 2018 Agreement is attached hereto as ***Exhibit "A"***.[2] Festival also alleges that it "notified RBC on August 23, 2023 that the 2018 Agreement was rescinded due to RBC's 'material failure to abide by the agreement's terms.'" (1st Am. Cmplt., Dkt. 57, ¶ 39). However, Festival does not allege that Defendants assented to or accepted its purported rescission. *See Chicago Limousine Service, Inc. v. Hartigan Cadillac, Inc.*, 139 Ill. 2d 216, 227 (1990) ("[C]ontracts—even fully executed ones—can be cancelled or rescinded by mutual consent of the parties or judicial decree.").

---

[2] On a Rule 12(b)(6) motion, this Honorable Court may "consider outside exhibits that are central to the plaintiff's claim and referred to in the complaint, even if supplied by the defendants." *Andersen v. Village of Glenview*, 821 Fed. Appx. 625, 627 (7th Cir. 2020); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 876 F.2d 429, 431 (7th Cir. 1993).

As a general rule, a contract may not be unilaterally rescinded by one party by the "mere communication of intent by one party to the other." *Copley v. Pekin Ins. Co.*, 111 Il. 2d 76, 86 (1986). In the trademark context, in *Baldwin Piano, Inc. v. Deutsche Wurlitzer GmbH*, 392 F.3d 881 (7th Cir. 2004), the Seventh Circuit reversed an injunction granted on summary judgment in favor of a trademark licensor against its licensee, following a purported termination of the license. The licensor (Baldwin Piano) was a direct descendant of the Wurlitzer piano company and owned its famous "Wurlitzer" trademark. One of its subsidiaries (Deutsche Wurlitzer) was spun off and received a license to use the trademark in connection with jukeboxes and related gear. The district court held that the license agreement was terminable at will, and therefore ruled in favor of Baldwin Piano. The Seventh Circuit reversed, holding that the license agreement was terminable only for cause, because of the economic nature of a trademark license as a non-reciprocal, non-executory contract. *Id.* at 883, 885.

Here, the 2018 Agreement states that "[p]rovided Brewing Co. is in compliance with the terms of this letter, Ravinia will not object to Brewing Co.'s use or registration of the Brewing Mark for beer, a brewery or a brew pub." It would not have made economic sense for RBC to agree to enter into this agreement, invest in its brewery, brand and beer product, only to allow Festival to unilaterally rescind its license (or non-objection) at will. While it is true that a ***claim*** for rescission can be based upon substantial nonperformance of contract, *see Horwitz v. Sonnenschein Nath & Rosenthal*, 399 Ill. App. 3d 965, 973-974 (1st Dist. 2010), merely claiming a breach or declaring recission is not self-executing, and nothing in the 2018 Agreement appointed Festival as the sole arbiter of Brewing's compliance. *Cf. Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 386 Ill. App. 3d 201, 214 (1st Dist. 2007) (question of contract compliance is a question of law). The very existence of the clause in the 2018 Agreement wherein Festival promised that "[i]n the event that

additional consumer confusion arises between the Brewing Mark and the RAVINIA marks, the parties agree to negotiate in good faith and take steps reasonably necessary to eliminate or mitigate such confusion" (***Exh. A*** § 7) belies any intention of the parties to allow Festival the unilateral authority to declare a breach and cancel the agreement without any prior notice

Festival makes only conclusory assertions about general violations of the two guidelines set forth in the 2018 Agreement (1st Am. Cmplt., Dkt. 57, ¶ 37). Completely absent from the First Amended Complaint are any allegations about ***what*** these breaches were, ***when*** Festival first learned about these purported material breaches of the 2018 Agreement or ***what steps*** Festival took to comply with its express or implied covenants of good faith and fair dealing. Such allegations are necessary for Festival to state a plausible claim because if Festival is claiming non-compliance based on conduct of which it knew or should have known about and tolerated for years prior to August 23, 2023 without complaint, while accepting the benefits of the agreement, then Festival has no legal grounds to unilaterally rescind the contract based on such tolerated conduct. *See Klucznik v. Nikitopoulos*, 152 Ill. App. 3d 323, 328 (2nd Dist. 1987) ("[T]he law requires one who knows he has grounds to rescind to reject the contract promptly and to adhere to that decision."); *see also Saverslak v. Davis-Cleaver Prod. Co.*, 606 F.2d 208, 213 (7th Cir. 1979) ("[A] party to a contract may not lull another into a false assurance that strict compliance with a contractual duty will not be required and then sue for non-compliance.")

### IV. The Fraud Counts (Counts III-IV and VII-VIII) Should Be Dismissed Failure To Plead Facts With Particularity.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A cause of action sounding in fraud must contain allegations as to "the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong*

*Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011) (quoting *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). "Claims of fraud or deceptive practices under the Illinois Consumer Fraud Act require the plaintiff to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Smith v. Gen. Mills Sales, Inc.*, Case No. 22 cv 1529, 2023 U.S. Dist. LEXIS 34701, at *2 (N.D. Ill. Mar. 3, 2023).

District courts in the Seventh Circuit have required that Lanham Act claims sounding in fraud meet the heightened pleading standards of Rule 9(b). *See, e.g., VitalGo, Inc. v. Kreg Therapeutics*, Case No. 16-cv-5577, 2017 U.S. Dist. LEXIS 210362, at *20-*25 (N.D. Ill. Dec. 21, 2017) (Dow, J.) (listing cases); *Control Solutions, LLC v. Oshkosh Corp.*, No. 10 C 121, 2011 U.S. Dist. LEXIS 32894, at *8 (N.D. Ill. Mar. 28, 2011) (Coleman, J.) (dismissing false designation of origin claim for failure to comply with Rule 9(b)). A claim "sounds in fraud" if it is "premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Festival's complaint is based on allegations of a course of intentionally fraudulent conduct. At paragraph 14, which is incorporated by reference into all counts, Festival alleges that "RBC and RBC Chicago have falsely implied (and continue to false imply) an association with Ravinia and its well-known RAVINIA Mark. From all appearances, this false implication is intentional." (1st Am. Cmplt., Dkt. 57, ¶ 14). In Counts III and IV for False Designation of Origin, Festival alleges that "RBC's promotion and sale of goods and services under the RAVINIA Mark is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, affiliation of the parties' products and services." (*Id.* ¶¶ 68, 75).

Festival fails to satisfy the Rule 9(b) particularity requirement with respect to Counts III, IV, VII and VIII of the First Amended Complaint because it does not allege the "who, what, when, where and how" of the alleged deceptive conduct. Festival does not allege, with particularity,

which particular uses of the registered "RAVINIA BREWING" trademark "falsely imply" an association with the Festival or the "Ravinia" mark, or when, where and how Defendants have, in fact, used the "RAVINIA Mark" as opposed to the "RAVINIA BREWING" mark. Festival refers generally to "RBC's social media and other consumer directed marketing" referring to Ravinia, and a "Key Strokes" beer (1st Am. Cmplt., Dkt. 57, ¶ 38), and then alleges "other misconduct and other infringing activity which has increased both in scope and frequency during Ravinia's 2023 season," (*id.* ¶ 39) but does not provide any further detail.

## V. The Trademark Dilution Counts IV and V Must Be Dismissed For Failure To State A Claim Because "Ravinia" Is Not Famous To The General Public.

The elements of a "trademark dilution" claim are: (1) that the mark is famous; (2) that Defendants adopted the same mark after the mark became famous; (3) that Defendants diluted the famous mark; and (4) Defendants' use is commercial and in commerce. 15 U.S.C. § 1125(c)(1); *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 811 (7th Cir. 2002). "Dilution by blurring" is "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B).

Festival has not sufficiently pleaded facts to plausibly establish that single name "Ravinia" is a household name or mark with respect to either "performing art shows" or "restaurant services," (let alone beer), as opposed to the more widely known trade name "Ravinia Festival." Festival admits that it did not register "Ravinia" as a mark until 2011. (1st Am. Cmplt., Dkt. 57, ¶ 25).

A mark is "famous" if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark possesses the requisite degree of recognition, the court may consider relevant factors such as: (i) the duration, extent, and geographical reach of advertising and publicity of the mark; (ii) the amount, volume and geographic extent of sales of

goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered on the principal register. *MaiBo (Shenzhen) Ke Ji You Xian Gon v. Whaleco, Inc.*, Case No. 23 C 2793, 2024 U.S. Dist. LEXIS 77462, at *8 (N.D. Ill. Apr. 29, 2024) (Hunt, J.). "Fame is a 'stringent standard' and '[t]o reach the requisite level of fame, a mark must generally be a 'household name.'" *Id.* at *8-*9. "Fame in a niche area or market will not suffice; the benchmark for fame is recognition among the general consuming public." *Id.* at *9.

Merely having an internationally recognized mark that is the subject of millions of dollars of marketing is not enough. *Id.* (*citing Joshi v. Joshi*, Case No. 18 C 5426, 2019 U.S. Dist. LEXIS 128625, at *16-*17 (N.D. Ill. Aug. 1, 2019) (Ellis, J.) ("National or even international publicity is not enough… Nor are millions of dollars spent on marketing.")) In *Coach Services v. Triumph Learning, LLC*, 668 F.3d 1356 (Fed. Cir. 2012), the Federal Circuit found the "COACH" mark used on luxury goods to be insufficiently famous to support a dilution claim notwithstanding the trademark holder's operation of approximately 400 retail stores, up to $60 million per year in advertising, and annual sales of $3.5 billion. *Id.* at 1367. Even the University of Texas' silhouette longhorn steer logo was deemed to be merely "niche" in terms of fame outside of college sports fans. *Bd. of Regents v. KST Elec. Ltd.*, 550 F. Supp. 2d 657, 676-679 (W.D. Tex. 2008).

In this case, Festival's problem is that although the Ravinia Festival has famously been hosting live shows at Ravinia Festival Park for decades, it has done so primarily under the name, "Ravinia Festival." Even "Ravinia Festival" is only recognizable to the niche of Chicago-area music fans, and would not, for instance, be known to the general consuming public outside of the State of Illinois. There are no allegations upon which any inference can be drawn as to the fame of the specific mark, "Ravinia," as opposed to "Ravinia Festival." Festival does not even adequately define the term "RAVINIA Mark" as distinguishing between these two different marks.

- 14 -

**VI.      Counts VII – XI Should Be Dismissed As Barred Or For Lack Of Jurisdiction.**

Counts VII - XI are state law or common law counts that should each be dismissed pursuant to Section 1125(c)(6) of the Lanham Act, which states that "[t]he ownership by a person of a valid registration … on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that (A) is brought by another person under the common law or a statute of a State; and (B) (i) seeks to prevent dilution by blurring or dilution by tarnishment; or (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement." 15 U.S.C. § 1125(c)(6). This Honorable Court may take judicial notice of the fact that the "RAVINIA BREWING Mark" is a trademark registered on the principal registry as Registration No. 5,423,771 in Class 32 for "Beer" as of March 13, 2018. *Kraft Foods Holdings, Inc. v. Helm*, 2002 U.S. Dist. LEXIS 21317, at \*17 (N.D. Ill. Nov. 1, 2002). A true and correct copy of the RAVINIA BREWING trademark certificate is attached hereto as ***Exhibit "B"***. These claims should also be dismissed if the federal claims are dismissed. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, defendants RAVINIA BREWING COMPANY LLC and RAVINIA BREWING COMPANY CHICAGO LLC respectfully pray that this Honorable Court dismiss the First Amended Complaint with prejudice, and for such other relief as is just.

Dated: June 20, 2024                                      Respectfully submitted,


By: /s/ *Shorge K. Sato*

Michael J. Delrahim (No. 6277361)
Andrew A. Jacobson (No. 6211224)
Shorge Sato (No. 6278382)
Brown, Udell, Pomerantz & Delrahim, Ltd.
180 North LaSalle Street, Suite 2850
Chicago, Illinois 60601
Tel: (312) 475-9900
Fax: (312) 475-1188
Email: mdelrahim@bupdlaw.com
       ajacobson@bupdlaw.com
       ssato@bupdlaw.com

*Attorneys for Defendants*
*Ravinia Brewing Company LLC and Ravinia*
*Brewing Company Chicago, LLC*