IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAVINIA FESTIVAL ASSOCIATION, ) <br> a not for profit corporation, ) <br> Plaintiff, ) <br>  ) <br> v. ) <br> RAVINIA BREWING COMPANY LLC, ) <br> RAVINIA BREWING COMPANY ) <br> CHICAGO, LLC, and RAVINIA BREWING ) <br> IP LLC, ) <br> Defendants. ) | Case No.: 1:23-cv-15322 <br><br> Judge Manish S. Shah <br> Magistrate Judge Gabriel A. Fuentes |

**REPLY MEMORANDUM OF RAVINIA BREWING COMPANY LLC AND RAVINIA BREWING COMPANY CHICAGO LLC IN SUPPORT OF MOTION TO DISMISS**

On June 26, 2024, this Honorable Court observed that its "initial early view" of this Motion to Dismiss was that "when you have two marks with the same word in them, and the allegation is that they're operating in similar industries or areas of commerce, not much needs to be pled to suggest a plausible claim." 6/26/24 Tr. at 5. This Honorable Court's instinct is partially correct but highlights the deficiencies with Festival's complaint. There are insufficient allegations in the First Amended Complaint to support the plausible inference that the two "operat[e]" in "similar industries or areas of commerce." Festival is a "world-class" outdoor music festival featuring world-renowned classical music and jazz performers like the Chicago Symphony Orchestra, Leonard Bernstein and Tony Bennett, and is hosted at the historic Ravinia Park festival grounds with tickets and season passes sold. (1st Am. Cmplt. ¶ 17). Brewing is a "small beer-focused brewpub" (*id.* ¶ 35) with free live performances by unnamed artists.[1] Festival and Brewing are not alleged to be competitors in any sense for the same consumer dollar. Festival only offers conclusory assertions about "similarity" but alleges almost no facts that could support any

---

[1] Festival does not contest Brewing's argument in its Motion that while Festival alleges that it sells tickets to its shows, it does not allege that Brewing charges for admission to its live performances.

reasonable inference that the offerings of a small beer-focused brewpub would likely be confused with those of Festival. Sheer repetition of the same conclusory assertion does not satisfy the pleading requirements of *Twombly/Iqbal*.

As for the trademark dilution claims, Festival merely makes assertions of its own importance in the public consciousness and claims that whether its brand is sufficiently "famous" is an issue of fact. However, Festival ignores that it has since 1936 operated under the brand, "Ravinia Festival," and that it was only in 2011 that it trademarked its performances and catering services under the single word, "Ravinia." Festival offers no factual allegations upon which a resasonable inference can be drawn that its single-word brand "Ravinia," is independently famous as opposed to its more commonly known brand "Ravinia Festival."

## REPLY ARGUMENT

### I. The Motion To Dismiss Is Not Untimely.

Festival argues that this Motion to Dismiss is untimely because it was not filed within 14 days of the Amended Complaint and because Brewing filed an answer to the original complaint. As to the deadline to answer or otherwise plead, Brewing has actively participated in this litigation and this technically late filing should be excused as it did not prejudice Festival and does not demonstrate a "willful refusal to litigate the case properly." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003); *see also H.C. Duke & Son, LLC v. Prism Mtkg. Corp.*, No. 4:11-cv-04006, 2013 U.S. Dist. LEXIS 162751, at *4-5 (C.D. Ill. Nov. 15, 2013). Further, in the context of Rule 15(a), a motion to dismiss is not a responsive pleading subject to the 14-day time limit. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *see also Kohler Co. v. Kopietzki*, Case No. 13-cv-1170, 2014 U.S. Dist. LEXIS 176934, at *1 (E.D. Wis. Dec. 19, 2014).

Festival cites to *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020). However, *Burton* holds only the ability to raise new affirmative defenses otherwise forfeited is not revived merely because an amended complaint is filed. Festival cites to the unreported Oregon district court case, *Brooks v. Caswell*, Civ. No. 3:14-cv-01232, 2016 WL 866303 (D. Or. Mar. 2, 2016) as to the forfeiture of a post-answer Rule 12(b)(6) motion to dismiss. However, in that case, the Oregon district court noted that this was a question of first impression in the Ninth Circuit. *Id.* at *2. The court noted that other district courts have "nevertheless exercised their discretion and entertained untimely post-answer motions to dismiss on amended complaints for the sake of judicial economy." *Id.* at *4.

In any event, RBIP, who has joined Brewing's motion to dismiss, has not waived its right to file a Rule 12(b)(6) motion as it has not filed an answer. Thus, judicial economy would dictate that because this Honorable Court would have to resolve this motion on the merits as to RBIP, it should do so also with regard to Brewing. Finally, even if this Honorable Court would deem Brewing's post-answer motion to dismiss the first amended complaint as untimely, Brewing could simply refile this motion as a motion for judgment on the pleadings pursuant to Rule 12(c) following the filing of an answer. Given the extensive briefing and the importance of the issues presented, judicial economy considerations would weigh in favor of excusing this technical defect and addressing this motion on the merits.

  **II.**  **Counts I-IV and VII – XI All Contain The Same Pleading Defect – the Failure to Plead Any Facts Supporting A Plausible Inference of Similarity Sufficient To Show The Likelihood That A Consumer Would Not Buy A Ticket To The Ravinia Festival Because They Had Beer At Brewing's Brewpubs.**

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.,* 683 F.3d 1190, 1209 (9th Cir. 2012). "[A]lthough the hallmark of trademark infringement is

- 3 -

protecting against consumer confusion, it is not enough that there just be some generalized confusion: 'trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.'" *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 926 (N.D. Ind. 2013) (*citing Rearden*, 683 F.3d at 1214) (quotations omitted)). Here, it is fair to assume that the average reasonably prudent Ravinia Festival-goer would qualify as an "aficionado" of live classical musical performances, *see Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000), as well as of the different "ambiance and themes" offered by Festival at Ravinia Park as compared to a local brewpub, *id.*, and thus it is neither reasonable nor plausible to infer that such a consumer would likely be confused that any free live music offered by Brewing is associated with Festival simply because the geographically descriptive name, "Ravinia," is used.

Festival's entire case is premised upon conclusory assertions that both Festival and Brewing offer "similar" goods and services. But how so? The only facts alleged are to the effect that Ravinia Festival is long-standing and well-known for its classical musical offerings at Ravinia Park, whereas Brewing is a "small, beer-focused" brewery and restaurant that sells food and offers live music performances at one of its venues. In its Response, Festival asserts that it "does not need to include allegations regarding the various parties' menu items, their respective restaurants' ambiance and themes or the quality of their offerings," nor does Festival believe that it needs to "identify specific musicians who have performed for or at events sponsored by both Ravinia and Defendants." [Dkt. 77, Resp. at 7]. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"The use of identical dominant words does not automatically mean that the two marks are similar." *Luigino's Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999) (holding that knowledge of another's trademark with an intent to compete is not the equivalent of an intent by a new entrant to deceive consumers or to cause consumer confusion). Rather, trademarks must be viewed in the market context in which they appear to the consumer. *See Barbecue Marx,* 235 F.3d 1041, 144 (7th Cir. 2000); *Sorenson v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). While the word "Ravinia" is used in both Festival's and Brewing's registered trademarks, Festival admits that it has not alleged any facts supporting even a plausible inference of similarity of the marks as seen by a reasonably prudent consumer in the marketplace. Further, "[e]ven where there is a precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion – and thus no trademark infringement – if the alleged infringer is in a different geographic area or in a wholly different industry." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). "The similarity of marks alone … does not necessarily lead to consumer confusion. Accordingly, we must proceed to consider the relatedness of the products and services offered. Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Id.* at 1055.

At page 7 of its Response, Festival offers a string citation to paragraphs in the First Amended Complaint as showing that both parties "offer substantially similar goods and services." The only factual "meat" on the proverbial bone from these paragraphs is as follows: (1) Festival operates a long-running renowned summer music festival with classical music as its foundation; (2) Festival sponsors a charitable Steans Music Institute that provides classical and jazz music education to students in the Chicago area; (3) in 2018, RBC opened a small beer-focused restaurant and bar in Highland Park; (4) in 2017 or 2018, RBC Chicago opened up a larger brewery and restaurant and

bar in or near the Logan Square neighborhood in Chicago; (5) in 2023, Brewing issued a "music-themed" beer line called "Key Strokes" where the label featured a grand piano; and (6) RBC Chicago "recently" hosted the Chicago Youth Symphony Orchestra's jazz student ensemble to play at the Logan Square brewpub location.

"The owner of a trademark is not entitled to a guarantee against confusion in the minds of careless and indifferent buyers, and merely occasional cases of confusion or thoughtless error by very inattentive purchasers are of very little significance in trademark and unfair competition cases." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002) (quoting *S.C. Johnson & Son, Inc. v. Johnson,* 266 F.2d 129, 141 (6th Cir. 1959)); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:14 (indicating that "a likelihood of confusion must be shown by more than an 'occasional misdirected letter.'") Episodic anecdotes of possible alleged confusion are too *de minimis* to support a plausible inference of a likelihood of confusion by the general public. See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001) (holding that four callers expressing confusion constituted *de minimis* evidence of confusion), *see also Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996) (holding that plaintiff's evidence that two consumers may have been misled cannot by itself be thought to create a contestable issue of likelihood of confusion).

The only facts alleged that could support a possible inference of a likelihood of consumer confusion are allegations of episodic anecdotes. The fact that Brewing at one point issued a music-themed "Key Strokes" beer line does not show that a consumer could plausibly be confused that Festival sponsored such a beer, as Festival does not allege that it produced, brewed or even sold its own-branded beer or that it has ever sponsored a brewery. At most, Festival alleges generally that "beverages" were made available at its concerts. The CYSO jazz ensemble event at the Logan

Square taproom is a one-off event and there are no allegations of fact that would support any inference that based on this single event at a brewpub 20 miles away from Festival, Festival concert-goers would think that Brewing was affiliated with or sponsored by Festival on an ongoing basis. Finally, as the Seventh Circuit held in *Barbecue Marx*, it would be "clear error" for this Honorable Court to assume that Festival and Brewing compete in the same industry simply because they both offer "music" and "food" without considering the sufficiency of facts pleaded to support any of the *Polaroid* factors for likelihood of confusion. Barbecue Marx, 235 F.3d at 1045. There is nothing pleaded that would support a reasonable or plausible inference that reasonably prudent consumers would confuse the "ambiance and themes" of Brewing's offerings with those of Festival.

None of the cases cited by Festival support its position that competition between a trademark holder and alleged infringer can exist when they operate in broad, generic categories such as "food" and "music." Festival cites to Facebook, Inc. v. Teachbook.com, LLC, 819 F. Supp. 2d 764 (N.D. Ill. 2011), Mon Aimee Chocolat, Inc. v. Tushiya LLC, No. 15 C 4235, 2015 U.S. Dist. LEXIS 143549 (N.D. Ill. Oct. 22, 2025), KJ Korea Inc. v. Health Korea, Inc., 66 F. Supp. 3d 1005 (N.D. Ill. 2014); Slep-Tone Ent. Corp. v. Sellis Enterprises, Inc., 87 F. Supp. 3d 897 (N.D. Ill. 2015), Republic Techs. (NA), LLC v. Friends Trading, Inc., No. 19 C 7991, 2020 U.S. Dist. LEXIS 185091 (N.D. Ill. Oct. 6, 2020) and Top Tobacco v. Fantasia Distribution, Inc., 101 F. Supp. 3d 783 (N.D. Ill. 2015). However, each of these cases shows the deficiencies with Festival's conclusory pleading of "similarity" as each involved direct competitors in the marketplace for the same or substantially similar products that a consumer might plausibly think come from a single source.

In *Facebook*, Judge Aspen denied the motion to dismiss by defendant Teachbook.com against Facebook's trademark infringement claim. With respect to the element of "similarity," the Court noted: "Facebook has adequately alleged that Teachbook and Facebook are offering similar products. According to the complaint, both Facebook and Teachbook operate social networking websites…. Facebook alleges that Teachbook is offering itself as a 'substitute for Facebook' in light of policies banning teachers from using Facebook." 819 F. Supp. 2d at 783-784.

In *Mon Aimee Chocolat*, Judge Kendall denied the motion to dismiss of Tushiya, LLC d/b/a Mon Ame Chocolat against the false designation of origin claim of Mon Aimee Chocolat, holding that the plaintiff sufficiently alleged similarity of products "by claiming that both parties sell chocolate and confectionary products" and "Defendants do not dispute that they sell chocolates and confectionaries through their online store." 2015 U.S. Dist. LEXIS 143549 at *15. The court held that "[t]he products are therefore more than similar enough to raise the possibility of relief with regard to this factor above the speculative level." This case is distinguishable because both plaintiff and defendant sold the exact same or similar product – chocolates – not simply "food." A consumer might plausibly be confused between two chocolate sellers. However, most prudent consumers do not simply go into the market looking for "food."

In *KJ Korea*, Judge Dow held that the complaint plausibly alleged the fact of "similarity of products" because both the plaintiff and defendant produced and sold "nutritional supplements, massage apparatuses and health food products in association with their respective marks." 66 F. Supp. 3d at 1015-1016. Notably, and citing to *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891 (7th Cir. 2001), the Court noted that the test for similarity of products is "whether the products are the kind the public attributes to a single source." *KJ Korea*, 66 F. Supp. 3d at 1015 (*quoting Ty, Inc.*, 237 F.3d at 899)). The products in question at *KJ Korea* were specific enough to satisfy this test.

However, the generic nature of the categories of "food" and "music" are such that it is not plausible to infer that the public would attribute "food" and "music" as emanating from a "single source." Just as consumers do not venture out into the marketplace like wild animals looking for "food," they typically do not pay to attend concerts simply because there will be "music" without knowing, for example, who is performing and what genre to expect.

In *Slep-Tones*, Judge Chang denied a motion to dismiss of a bar owner (Sellis) whose karaoke contractors "pirated" karaoke accompaniment tracks produced and owned by the plaintiff Slep-Tones. The "similarity" analysis in this case was "simple" -- Slep-Tone alleges that the exact same mark is being used on inferior products. 87 F. Supp. 3d at 907. Both parties were offering competing products – karaoke accompaniment tracks. The category was not as broad as "music" in general, but a specific form of music.

In *Republics Technologies*, Judge Ellis denied a motion to dismiss a trademark infringement suit brought between two competing sellers of "glass water pipes, parts and related accessories" for smoking tobacco and other products, otherwise known as "bongs." This was a case involving a counterfeit product being sold under a false trademark. With regard to the "similarity of products" factor, the Court noted that the plaintiff manufactured, advertised and sold RooR-branded waterpipes "which are the same type of products" that the defendants sold. 2020 U.S. Dist. LEXIS 185091, at *11.

In *Top Tobacco*, a manufacturer of tobacco and tobacco products under the brand "FOUR ACES" sued a competitor that offered flavored tobacco under the brand "ACE OF SPADES." With respect to the "similarity of products" analysis, Judge Blakey held that "both produce and market tobacco, and distribute and sell to tobacco shops, novelty, convenience and other retail stores throughout the United States." 101 F. Supp. 3d at 790.

Thus, while it is true that Festival does not have to prove its case at the pleading stage, under the *Twombly/Iqbal* plausibility analysis, this Honorable Court has the obligation to serve as a gatekeeper to require that Festival plead facts sufficient to support a non-speculative inference as to at least a few of the several *Polaroid* factors, and especially with respect to the similarity of the products and services offered. Nothing alleged shows that Brewing and Festival are in any way competitors in the marketplace for the same consumer dollar. They operate in what appear to be wholly different industries and wholly different markets such that a reasonably prudent consumer would not associate Brewing with Festival or vice versa. The mere fact that they both use the geographically descriptive word, "Ravinia," is insufficient to support a plausible inference of a likelihood of consumer confusion.

**III.     Counts I And II Should Be Dismissed Because The 2018 Agreement Constitutes "Consent" To Brewing.**

The 2018 Agreement, which Festival references repeatedly in its First Amended Complaint (*see* First Am. Cmplt, Dkt. 57, at ¶¶ 35-39, 41), expressly provided Festival's consent to RBC's use of "Ravinia" in its name "Ravinia Brewing Company" and on its beer and beer-related products. While Festival alleges that on August 23, 2023, it sent a notice to Brewing declaring its belief that material breaches of this Agreement occurred and purporting to rescind such agreement, nothing in the 2018 Agreement appointed Festival as the sole arbiter of Brewing's compliance, and in fact, the 2018 Agreement contained a clause stating that in the event of additional consumer confusion, the parties would agree to negotiate in good faith to resolve such issues. There is no allegation that Festival attempted to negotiate before summarily declaring the 2018 Agreement to be in breach and rescinded.

Festival cites to *Sahadi v. Continental Illinois Nat. Bank & Tr. Co. of Chicago*, 706 F.2d 193 (7th Cir. 1983) for the hornbook proposition that one party's material breach of contract is grounds

for recission of a contract. In *Sahadi*, the Seventh Circuit reversed partial summary judgment granted in favor of an obligor of a loan against its lender, who called the $7 million loan when interest payments were one day late because there were material facts in dispute as to whether this breach was "material." The Court held that "the determination of 'materiality' is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the nonbreaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." *Id.* at 196. Even if a non-breaching party to a contract believes a breach to be material, this does not make it so, and it is a complicated question that is for a court to determine. Thus, *Sahadi* supports Brewing's position that any alleged "material breach" was not self-executing, such that it rendered the 2018 Agreement void *ab initio* or voidable at Festival's sole discretion.

Festival alleges generally that Brewing ignored font size requirements on its beer can labels and sponsored live music without a sufficient disclaimer of association with Festival. (*See* 1st Am. Cmplt. Dkt. 57, at ¶¶ 36-37). However, Festival does not allege any factual details for these claims, other than alleging that "recently," RBC Chicago (which was a non-party to the 2018 Agreement) hosted a CYSO Jazz Student Ensemble. (*Id.* ¶ 41). Festival does not even plead a claim for breach of contract or declaratory judgment. Had it done so, such a claim would fail under *Twombly/Iqbal* because it would be based entirely on conclusory assertions disguised as allegations of fact: "The parties had a contract and Brewing breached the contract."

Festival's theory that the 2018 Agreement was rescinded due to Brewing's alleged material breach thereof fails for two reasons. First, under the "partial breach doctrine," if Festival knew

about and tolerated the alleged "material breaches," it forfeited its right to later declare the contract rescinded or voidable on the basis of such prior breaches. See *PML Dev. LLC v. Vill. of Hawthorn Woods*, 2023 IL 128770, at *P51-*P52 ("[F]ollowing a material breach, the injured party reaches a fork in the road: it may either continue the contract (retain its benefits of the bargain and sue for damages) or repudiate the agreement (cease performing and sue for damages). If the party elects to continue with the contract, it cannot suspend performance later and then claim it had no duty to perform based on the first material breach.")

Without any allegations of fact regarding **what** breaches occurred, **when** they occurred and **how** Festival learned of them, Festival has not plausibly alleged that "material breaches" occurred that justified its unilateral rescission of the 2018 Agreement. Second, in order to benefit from the "first-to-breach" rule, Festival would have to at least allege that it substantially performed its end of the 2018 Agreement. The 2018 Agreement clearly provides that in cases of additional consumer confusion, the parties agreed to negotiate in good faith. If Festival breached that provision, Festival was the "first-to-breach" and therefore forfeited its right to summarily revoke the consent it provided to Brewing to use the name, "Ravinia," in the 2018 Agreement.

At a minimum, the 2018 Agreement shows that Festival cannot state a claim for trademark infringement for any acts or omissions occurring prior to the date of its purported rescission on August 23, 2023. Because Festival does not allege any post-rescission infringements that would be likely to confuse consumers, Festival fails to plausibly state a claim in Counts I and II.

### IV. Festival Has Not Pleaded Its Claims Based On Fraud With Particularity.

Counts III, IV, VII and VIII all are based on a course of fraudulent conduct because Festival alleges that Brewing advertised and operated "under the RAVINIA Mark" in order to intentionally and deceptively create a false association that its products and services were affiliated with

Festival. In Counts III and IV, Festival alleges that Brewing's "promotion and sale of its products and services under the RAVINIA Mark is likely to cause confusion and mistake and to deceive consumers…." (1st Am. Cmplt., Dkt. 57, ¶¶ 68, 75). In Counts VII and VIII, Festival alleges that Brewing uses "confusingly and deceptively similar imitations of the RAVINIA Mark" with "the intention of deceiving the public as to the source of [Brewing's] goods and services. (*Id.* ¶¶ 102, 105). More than just alleging that Brewing's registered trademark shares a word "Ravinia" in common with Festival's trademark, Festival is alleging that Brewing has counterfeited and stolen the distinctive RAVINIA Mark. In other words, Festival is alleging that Brewing is advertising itself as the RAVINIA FESTIVAL itself.

Festival does not discuss or contest the specific cases cited by Brewing that false designation of origin claims must comply with Rule 9(b) in this District. *See VitalGo, Inc. v. Kreg Therapeutics*, Case No. 16-cv-5577, 2017 U.S. Dist. LEXIS 210362, at \*20-\*25 (N.D. Ill. Dec. 21, 2017) (Dow, J.) (listing cases); *Control Solutions, LLC v. Oshkosh Corp.*, No. 10 C 121, 2011 U.S. Dist. LEXIS 32894, at \*8 (N.D. Ill. Mar. 28, 2011) (Coleman, J.) (dismissing false designation of origin claim for failure to comply with Rule 9(b)). Notably, in *VitalGo*, Judge Dow held that Rule 9(b) applied to a section 43(a) false designation claim that sounded in fraud because "[i]n addition to claiming that there is a likelihood of confusion based on Defendants' conduct, Plaintiffs claim that Defendants' conduct was intentional and deceptive to consumers." 2017 U.S. Dist. LEXIS 210362, at \*22.

Festival asserts that it has alleged the "who, what, when, where and how" required by Rule 9(b). But Festival's allegations as to Brewing's alleged fraudulent conduct is completely conclusory. Festival does not allege with any particularity the identity of the person making the misrepresentation, what the misrepresentation was, or the when, where or how Brewing

purportedly operated under the "RAVINIA Mark" as opposed to its registered "RAVINIA BREWING" Mark. Notably, Festival cannot plausibly allege "false designation of origin" if it admits that Brewing is actually operating and advertising under its own RAVINIA BREWING Mark because such operation could not be said to be a "false" designation of origin.

### V. Festival Has Not Plausibly Alleged That Its Single-Word Trademark "Ravinia" Is Sufficiently Famous (As Opposed To "Ravinia Festival").

With respect to the trade dilution counts, Festival argues that it has sufficiently alleged that "the RAVINIA Mark" is widely known. However, Festival defines the "RAVINIA Mark" as including five different trademark registrations that encompass both "RAVINIA FETSIVAL" and "RAVINIA." (1st Am. Cmplt., Dkt. 57, ¶ 25). The older trademark registrations dating back to 2002 are for "RAVINIA FESTIVAL." Festival registered trademarks for "RAVINIA" in 2011 and 2021. Festival alleges that it is well-recognized due to its long-running summer music festivals dating back to 1936. (*Id.* ¶¶ 17, 24). However, it does not distinguish between its operation and advertisement under the RAVINIA FESTIVAL Mark as opposed to its more recent RAVINIA mark, and there are no factual allegations to suggest that Festival's "RAVINIA" Mark is famous, as opposed to its RAVINIA FESTIVAL mark.

By grouping together its five trademarks for its two names, Festival attempts to claim that somehow, Brewing's operation and use of its registered RAVINIA BREWING mark somehow dilutes, blurs or tarnishes Festival's RAVINIA FESTIVAL mark. However, this is not a plausible claim because those are two completely different brands. To the extent that Festival's claim is that RAVINIA BREWING dilutes, tarnishes or blurs the RAVINIA (single-word) mark, Festival does not allege that this single-word mark is famous independent of RAVINIA FESTIVAL.

In *Plumeus, Inc. v. INTERSOG LLC*, 13 C 2206, 2013 U.S. Dist. LEXIS 147368 (N.D. Ill. Oct. 11, 2013), Judge Guzman granted a Rule 12(b)(6) motion to dismiss a trademark dilution claim as

insufficient under *Twombly* where the plaintiff only alleged that it had "invested substantial resources" in "numerous national and international marketing campaigns" since 1996 and asserted that its marks had "become famous in the United States and Canada." *Id.* at *5-6. Here, Festival merely asserts that the Ravinia Festival is long-standing and well-known, but it does not allege any facts regarding the "RAVINIA" (single-word) mark as set forth in 15 U.S.C. § 1125(c)(2)(A): (i) the duration, extent, and geographic reach of the advertising and publicity of the mark; (ii) the amount, volume and geographic extent of sales of goods and services offered under the mark; (iii the extent of actual recognition of the mark; and (iv) whether the mark was registered on the principal register.

Even if the "RAVINIA Mark" were interpreted as including "RAVINIA FESTIVAL," Festival has failed to allege that "RAVINIA FESTIVAL" is itself a household name. Festival alleges that the performers at Ravinia Festival are world famous. But just because a venue hosts famous artists does not make the venue itself famous. The complaint contains no allegations of fact that plausibly allow the inference that "Ravinia Festival" is known throughout the United States for its live musical performances and restaurant and catering services, as opposed to the niche market of classical music enthusiasts in and around Highland Park.

## **CONCLUSION**

For the foregoing reasons, defendants RAVINIA BREWING COMPANY LLC and RAVINIA BREWING COMPANY CHICAGO LLC respectfully pray that this Honorable Court dismiss the First Amended Complaint with prejudice, and for such other relief as is just.

Dated: August 9, 2024  Respectfully submitted,


By:  /s/ *Shorge K. Sato*
Michael J. Delrahim (No. 6277361)
Andrew A. Jacobson (No. 6211224)
Shorge Sato (No. 6278382)
Brown, Udell, Pomerantz & Delrahim, Ltd.
180 North LaSalle Street, Suite 2850
Chicago, Illinois 60601
Tel:  (312) 475-9900
Fax:  (312) 475-1188
Email:  mdelrahim@bupdlaw.com
   ajacobson@bupdlaw.com
   ssato@bupdlaw.com

*Attorneys for Defendants*
*Ravinia Brewing Company LLC and Ravinia Brewing Company Chicago, LLC*